FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA AND RALEIGH BANKING AND TRUST COMPANY v. NELSON A. COURT-WAY, HENRIETTA D. COURTWAY, EDWARD J. BARBER AND OAKLEY WOOD, AS EXECUTORS AND TRUSTEES OF THE ESTATE OF JAMES BARBER, AND J. B. THOMAS, AS EXECUTOR OF THE ESTATE OF J. C. THOMAS, J. TALBOT JOHNSON, S. B. RICHARDSON, W. A. WAY, S. O. MILLER, W. N. HUTT, M. H. FOLLEY, MARLBORO PEACH ORCHARDS, INC., AND J. McNEAL JOHNSON, DEFENDANTS.

(Filed 1 April, 1931.)

1. **Frauds, Statute of, E a—Signature of secretary in official capacity to minutes of board is not sufficient as signature of directors.**

The minutes of a meeting of the board of directors of a corporation voting in favor of indemnifying its secretary against loss in assuming a corporate indebtedness, signed only by the secretary in his official capacity is not a sufficient writing to prevent the operation of the statute of frauds, it being necessary that the writing be signed by the party to be bound or by his authorized agent, and the payee of the note evidencing the indebtedness cannot hold them personally liable.

**2. Indemnity A a—Where indemnity contract purports to be for bene-fit of payer only, payee may not claim it was made for his benefit.**

Where the directors of a corporation vote for and pass a resolution each pledging his individual liability in proportion to the amount of stock he holds in the corporation as security for its secretary in obtaining a loan on his individual note for the benefit of the corporation, the payee of the note cannot enforce the individual liability of the directors upon the ground that he was the beneficiary of the transaction when it appears from the resolution itself and from the interpretation placed thereon by the parties that only the maker of the note was the beneficiary of the resolution in exclusion of the payee.

**3. Subrogation A c—Where contract of indemnity is void as to payee he is not entitled to subrogation to rights of obligee.**

Where a contract indemnifying the maker of a note against loss thereon is void as to the payee of the note on account of the operation of the statute of frauds, the payee may not claim to be subrogated to the rights of the maker under the contract of indemnity.

CIVIL ACTION, before *Barnhill, J.*, at March Term, 1930, of MOORE.

The Marlboro Peach Orchards was a North Carolina corporation and owned a tract of land in Moore County, containing about 512 acres of land. This corporation operated the property as a farm and peach orchard and maintained certain buildings upon the property, together with farming utensils and livestock. The corporation was indebted to different people in various amounts, and on 5 December, 1924, a meeting of the board of directors was held for the purpose of devising ways and means to secure money to operate the farm and to pay certain indebtedness. The directors participating in the meeting were J. C. Thomas, S. B. Richardson, W. A. Way, J. T. Johnson, S. O. Miller, W. N. Hutt, M. H. Folley, and N. A. Courtway. Thomas was president and Courtway was secretary of the corporation. A resolution was duly adopted containing the following provisions: (a) that it was advisable for the corporation to borrow $50,000; (b) that as the corporation could not borrow from a land bank in its own name, it was the sense of the directors that the property should be conveyed to some third party in order to secure the loan in the name of an individual, and that for such purpose the property of the corporation should be conveyed to the individual selected who should execute a note evidencing the loan and a deed of trust upon the property, and thereafter reconvey the property to the corporation; (c) N. A. Courtway, secretary and assistant manager of the company, having signified his willingness to procure the loan in his individual capacity, "provided the directors would secure him against loss by reason thereof," it was resolved that the proper officers of the company be directed to convey the property of the corporation to N. A. Courtway in fee, and that said Courtway be authorized and instructed to execute a note and deed of trust to the

Joint Stock Land Bank for a loan of $50,000, pledging the real estate to be conveyed to him by the corporation as security; (d) It was further resolved that "each of the directors present shall be, and they do hereby pledge themselves to the said N. A. Courtway for an amount equal to their respective shares of stock in the Marlboro Peach Orchards, Inc., as security to the said N. A. Courtway against any loss, claim or demand from such Land Bank by reason of his note executed for said loan, and that said loan shall be construed as the first obligation of the Marlboro Peach Orchards, Inc., until such time as the same is fully paid off and discharged," etc.

All of the directors voted for the adoption of the resolution. The minutes of the meeting show that James Barber was a director, but the uncontradicted testimony of the secretary was to the effect that Barber was not in fact a director but a stockholder, and that his name was put in the minutes simply to show that he was present at the meeting. In consequence of the resolution the officers of the corporation applied to the plaintiff for a loan of $50,000. The plaintiff declined to loan $50,000 upon the property, but agreed to make a loan of $40,000. The commitment from the plaintiff to the corporation stated that the officers of the plaintiff bank estimated the property to be worth $100,000, and further stated, "We all know that the loan is perfectly safe at $50,000." But by reason of the fact that the loan would doubtless be scrutinized by the Farm Loan Board in Washington, it was thought advisable that the loan should be reduced to $40,000. The commitment from the plaintiff to the corporation further stated: "We will expect you to work out a plan by which at least the directors of the existing corporation shall become parties to the note." On 28 January, 1925, the defendant Courtway, replying to the commitment of plaintiff, sent the plaintiff a copy of resolution adopted by the board of directors on 5 December, stating that the corporation would accept the loan in the sum of $40,000 with the understanding that there should be no personal liability upon the directors of the corporation. The plaintiffs submitted the proposition as to whether the directors would be personally bound by the resolution to its attorneys and were advised on 31 January, 1925, that they did not think the resolution passed by the Marlboro Peach Orchards Corporation would be sufficient to bind the directors personally for the payment of the note. Thereafter, on 9 February, 1925, the corporation delivered a deed to said property to the defendant Nelson A. Courtway. On the same day a deed of trust upon the property from Nelson A. Courtway and his wife, Henrietta D. Courtway, was probated, conveying the property to the Raleigh Banking and Trust Company as trustee for the plaintiff to secure a note of $40,000. On the same day Courtway and wife delivered a warranty deed for the property reconveying the same to the Marlboro Peach Orchards.

Time went on and the Marlboro Peach Orchards and Nelson A. Courtway both became insolvent. During the fall of 1928 the land was sold under a second mortgage or deed of trust to the defendant, J. McNeal Johnson. Subsequently on 26 June, 1929, this action was brought against the defendants to foreclose the deed of trust and to recover the full amount of said indebtedness against the individual defendants. The allegations of the complaint proceeded upon the theory that the directors of the company entered into a joint enterprise with the plaintiff for the purpose of securing said loan and that said Courtway executed the note and deed of trust as agent for the other defendants. James Barber died before the suit was instituted and his executors and trustees were made defendants. J. C. Thomas, president of the corporation died and his executor was made a party.

The following issues were submitted to the jury:

1. "Did the defendants, J. C. Thomas, J. Talbot Johnson, S. B. Richardson, W. A. Way, S. O. Miller, W. N. Hutt and M. H. Folley contract and agree to and with the defendant, Nelson A. Courtway, to save the said Nelson A. Courtway against any loss, claim or damage from such bank as should advance said Nelson A. Courtway a loan upon the lands conveyed to said Courtway by the Marlboro Peach Orchards, Inc., to the extent of their respective stock holdings in the Marlboro Peach Orchards, Inc., as set out in the resolution offered in evidence, as alleged?"

2. "If so, was said resolution forwarded to the plaintiff bank which advanced said loan, with the authority and the approval of said defendants, prior to the making of said loan?"

3. "If so, did said plaintiff bank, in making said loan, rely upon said resolution as a material consideration therefor and as security thereto?"

4. "Are the defendants, Nelson A. Courtway and Marlboro Peach Orchards, Inc., insolvent as alleged?"

5. "Was the procurement of said loan, and the conveyance and reconveyance of said property, as set out in said complaint, pursuant to and a part of a joint enterprise on the part of the individual defendants other than Henrietta D. Courtway and Edward J. Barber as alleged?"

6. "Did said bank, in making said loan, act upon the assurance and security of said individual defendants as embraced in said resolution, and rely upon the individual responsibility of said directors as provided for in said resolution as a material consideration therefor, as alleged?"

7. "As between the defendants who were parties to said agreement, was the said Nelson A. Courtway secondarily liable and occupy the position of an accommodation maker for the benefit of the said individual defendants, as alleged?"

8. "What amount, if anything, is due and unpaid upon said note offered in evidence?"

9. "What amount, if any, is due the plaintiff for insurance paid under the terms of said mortgage?"

10. "Had defendant J. B. Thomas, executor, fully administered the estate of his testator, J. C. Thomas, prior to notice of the plaintiff's claim, as alleged?"

The jury answered the first issue "Yes"; the second issue "No"; the third issue "No"; the fourth issue "Yes"; the fifth issue "No"; the sixth issue "No"; the seventh issue "No"; the eighth issue "$38,706.30, with interest from 1 March, 1928"; the ninth issue "$66.78 with interest from 1 July, 1928"; the tenth issue "Yes."

From judgment upon the verdict the plaintiff appealed.

*Smith & Joyner, U. L. Spence, and Melton & Belser, Columbia, S. C., of counsel for plaintiff.*
*Varser, Lawrence & McIntyre for certain defendants.*
*Biggs & Broughton for estate of James Barber.*

BROGDEN, J. Does a resolution, passed by the board of directors of a corporation, indemnifying the maker of a promissory note which is secured by deed of trust, against loss claim or demand by reason of the execution of the note, impose personal liability upon said directors to the payee of said note?

The plaintiff seeks to recover from the directors upon three major theories, to wit: (a) The statute of frauds does not apply to the transaction; (b) the plaintiff, Land Bank, is the contemplated beneficiary of the indemnity agreement; (c) plaintiff is entitled to recover by reason of the application of the principle of subrogation.

The first theory is overthrown by the decision of this Court in *Asbury v. Mauney,* 173 N. C., 454. It was expressly held that the minutes of a corporate meeting are not ordinarily sufficient memorandum in writing to satisfy the requirements of the statute of fraud. The Court said: "The defendant did not sign the minutes and the plaintiff must, therefore, show, in order to maintain his position, that he himself when signing the minutes as secretary of the corporation was signing as the duly authorized agent of the defendant. The first objection to this position is that the plaintiff did not purport to sign the minutes as agent for the defendant, but as secretary of the corporation, and, again, it seems to be well settled that one of the contracting parties cannot be the agent of the other for the purpose of binding him by his signature under the statute of frauds."

The second theory rests upon a line of decisions beginning with *Gorrell v. Water Co.,* 124 N. C., 328, and running through *Federal*

*Land Bank v. Atlas Assurance Co.,* 188 N. C., 747, and *Schofield's Sons v. Bacon,* 191 N. C., 253. Summarizing the law in this line of decisions in *Bank v. Assurance Co.,* 188 N. C., 747, it was written: "Numerous decisions have established the principle, in this jurisdiction at least, that ordinarily the beneficiaries of an indemnity contract may maintain an action on said contract, though not named therein, when it appears by express stipulation, or by fair and reasonable intendment, that their rights and interests were in the contemplation of the parties and were being provided for at the time of the making of the contract."

In the case at bar it appears by express stipulation that the indemnity was designed for the exclusive benefit of Courtway. This conclusion is reinforced not only by the language of the resolution itself, but by the practical construction placed upon the instrument by the parties, in correspondence, prior to the execution of the deed of trust. The practical construction of a written instrument by the parties prior to a controversy always challenges serious consideration. *Cole et al. v. Fibre Co., ante,* 484. Indeed, the "beneficiary doctrine" does not apply to bonds of strict indemnity where the indemnity by either express terms or reasonable intendment runs solely to the benefit of the obligee. *McCausland v. Construction Co.,* 172 N. C., 708.

Nor can plaintiff recover upon the theory of subrogation. If the resolution of the directors fails to satisfy the statute of frauds so far as the plaintiff is concerned, then conventional subrogation could not grow out of a contract that never existed. In other words, the plaintiff, if entitled to recover at all, must recover upon some phase of the resolution adopted by the directors of Marlboro Peach Orchards. If that resolution, so far as the plaintiff is concerned, falls within the inhibition of the statute of frauds, then all right to recover against the individual directors fails. Thus, it becomes immaterial whether Barber was a director or not, or whether the estate of Thomas was fully administered before notice of claim.

No error.